# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JENNIFER M. GLAUSER, | : | Bankruptcy No. 05-19233DWS |
| aka Jennifer M. Wurster, | : | |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:   DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion to Dismiss or in the Alternative for Relief from Stay (the "Motion") of Deutsche Bank National Trust ("Bank").  A preliminary hearing was held on August 28, 2006, and the stay was retained pending a final hearing on September 6, 2006 for the reasons set forth in my Order dated August 31, 2006.  Debtor, who was unavailable for the initial hearing, was given the opportunity to appear at the continued hearing and present testimony in opposition to the Motion.  Having now heard her testimony, the Motion is granted.  However, while Bank presses for dismissal, the Court finds that relief from stay only is warranted.

**BACKGROUND**

Debtor filed a Chapter 13 petition on July 7, 2005.  Bank is the holder of a mortgage on residential real estate owned by the Debtor and her husband located at 14 Bark Hollow Lane, Horsham, Pennsylvania.  Confirmation of Debtor's Chapter 13 plan was opposed by

Bank who is the defendant in an adversary proceeding (the "Adversary") commenced on August 19, 2005 by Debtor and her husband seeking to enforce rescission of Bank's mortgage loan.[1] On June 7, 2006 Bank filed a motion for relief from stay ("MFR") alleging that Debtor had made no post-petition payments on Bank's mortgage contrary to the proposed Debtor's Fourth Amended Plan (the "Plan") filed on May 26, 2006[2] and was presently in arrears for post-petition payments totaling $22,350.25. Doc. No. 41.[3] In response, Debtor admitted a delinquency and set forth a proposal to become current. The MFR was scheduled for hearing on June 27, 2006; confirmation of the Plan and the Chapter 13 trustee's motion to dismiss were scheduled for hearings on July 6, 2006.

On June 27 the MFR hearing was adjourned as the parties reported that the MFR had been settled and that a stipulation would be filed memorializing the agreement. On July 6, 2006 the Plan was confirmed when Bank withdrew its objection based on the Stipulation which was filed on July 10, 2006 and approved by the Court on July 11, 2006.

---

[1] The Adversary was scheduled to be tried on September 6, 2006 but has been continued until October 20, 2006 due to the unavailability of Debtor's expert witness.

[2] After paying a total of $650 from August 2005 through April 2006, Debtor's confirmed plan proposes to pay monthly $400 from May 2006 through November 2006; $500 through May 2007; and $606 for the remaining 38 months. Debtor states that the additional funds are "anticipated" from an increase in earnings.

[3] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules).

Doc. Nos. 52, 53. The Stipulation had the following salient terms: (1) the parties agreed that Debtor failed to make her monthly post-petition payments of $1,318.41 to Bank after filing her petition and that after Bank filed the MFR she made one post-petition payment of $1,318.72; (2) to avoid the expense and uncertainty of litigation, the parties agreed to resolve the issues by the Stipulation pursuant to which Bank "will be granted relief from the automatic stay, in the event that the Debtor fails to make payments as agreed herein," Stipulation ¶ 11; (3) the payment terms of the Stipulation require Debtor to pay the post-petition arrears by making a $5,000 payment on or before July 15, 2006, payments of $1,318.72 for seven months starting August 1, 2006, and a final arrearage payment of $271.14 on March 1, 2007, id. ¶ 4;[4] and (4) Debtor is to resume making regular post-petition payments of $1,318.72 on April 1, 2007, id. ¶ 6.

On July 26, 2006 Bank sent a ten day notice of default as required by the Stipulation for Debtor's failure to make the $5,000 payment on July 15, 2006. Exhibit M-1. The payment was received by Bank on August 8, three days after the cure period expired. Exhibit D-1. When the August 1 double payment of $2,765.44[5] was not received, Bank filed the Motion and a hearing was scheduled for August 28. Prior to the hearing, Debtor sent a payment of $1,382.72 which was received by Bank on August 21, 2006. Exhibit D-2. As of the September 6, 2006 hearing date, Debtor had neither made the balance of the August payment nor any payment for September.

---

[4] Payment of arrears and current payment under the mortgage loan result in total monthly payments as follows: $2,637.44 from August 1, 2006 through February 1, 2007, and a payment of $1,589.86 on March 1, 2007, id. ¶¶ 4-5;

[5] Supra n.4.

In her Answer to the Motion, Debtor offered no excuse for failing to make the payments rather averring that they had been made, albeit late. Doc. No. 63. Only when her counsel brought a motion on August 25 (Friday) to continue the August 28 (Monday) hearing or for permission to present her husband's testimony by telephone was it disclosed that she had broken her ankle on June 28, 2006, allegedly causing her to miss work and not to have the funds available to pay Bank as soon as she had anticipated. Doc. No. 64. According to Debtor's testimony her husband advised her counsel David A. Scholl of the accident (which required surgery and a short hospital stay) one week after it occurred, i.e., around July 4. She acknowledged that at the time of her injury she knew she would be out of work, thinking that her absence might be for as long as twelve weeks. She also was aware of her employer's disability policy which provides compensation of 60% of the regular gross income. Debtor returned to work after six weeks; three of her biweekly paychecks were reduced.

Notably Debtor's attorney never advised Bank's counsel nor the Court of Debtor's accident and reduced pay, a fact that was known at the time of the Plan confirmation hearing. With the Bank's opposition to confirmation of the Plan withdrawn in reliance on the Stipulation, the Trustee likewise withdrew his motion to dismiss and confirmation was secured. Moreover, unaware of the medical problem that Debtor now relies on to justify her failure to perform the Stipulation, Bank's counsel presented the Stipulation for Court approval on July 10, 2006.

At the final hearing Debtor testified about the circumstances that caused her to default under the Stipulation. Prior to any problem with her paycheck[6] Debtor ran into a problem raising the $5,000 initial payment. A relative was to have assisted her by contributing $3,000 but he only gave $1,000. The additional $2,000 had to be drawn from the Glauser's own resources. The consequence of the diminished assistance was the late payment and the inability, along with two reduced paychecks, to make the August 1, 2006 payment. Debtor returned to work and full salary on August 10, 2006 and provides no explanation why no further payments have been made. She states that she can make up the arrears by making three weekly payments (9/8, 9/15 and 9/22) of $1,318.72 and current payments starting on October 1.

At the conclusion of the hearing after the foregoing facts were elicited, Bank's counsel averred that she would have never withdrawn her opposition to confirmation had she known that the Stipulation payments were at risk by reason of Debtor's disability or reliance on securing funds from a third party.

**DISCUSSION**

It is well settled that stipulations between the parties in settlement of litigation are favored by the law and should not be lightly set aside. Waldorf v. Shuta, 142 F.3d 601, 616 (3rd Cir.1998); In re Robinson, 2004 WL 2495406 (Bankr. E.D. Pa. Oct. 18, 2004). Stipulated agreements avoid costly and time-consuming litigation. In re Buzzworm, Inc.,

---

[6] Her first reduced payment was on July 14, 2006.

178 B.R. 503, 512 (Bankr. D. Co. 1994). In contested matters similar to the case at bar, stipulations have long been entered into and enforced to settle relief from stay motions. In re Wald, 211 B.R. 359 (Bankr. D. N.D. 1997). The failure to enforce them undermines the willingness of parties to enter into future agreements, which inevitably impacts the prompt and efficient administration of bankruptcy cases. As noted by the Court in Wald, "'if [debtors] can remake the terms of their stipulations, especially default provisions, such agreements could fall into disfavor, significantly complicating the process of negotiating consensual plan provisions and confirmation proceedings.'" Id. at 361(quoting In re Burrows, 1995 WL 42398, at *3 (Bankr. D. Idaho January 26, 1995)). Therefore, unless a stipulation has not been entered into voluntarily, or its terms violate public policy, or other extenuating circumstances exist, a court will enforce the clear terms of a stipulation of the parties previously approved by the court at the request of the parties. In re Sando, 30 B.R. 474, 477 (E.D. Pa. 1983); Sellersville Savings and Loan Association v. Kelly, 29 B.R. 1016,1018 (E.D. Pa. 1983); Wald, 211 B.R. at 361.

In the instant case, Debtor does not contend that the Stipulation was not entered into voluntarily or that its terms violate public policy. Rather she relies on two alleged extenuating circumstances as grounds to be excused from the timely payment obligations of the Stipulation.[7] First she was unable to raise third party funds to make the initial

---

[7] In the pleadings Bank's counsel prepared, he first asserted that Bank's wrongful conduct should be grounds to allow Debtor to make up the missed payments. He also stated that Debtor had made a payment in June that needed to be considered. As I stated in my August 28 Order, the parties' relationship prior to the Stipulation is not relevant to its enforcement. Those issues merged into the agreement. Moreover the Stipulation expressly acknowledges that the Bank received the June payment.

payment. Then her salary was diminished because she was on disability for six weeks. However, in order for these circumstances to justify relieving Debtor from the terms of the Stipulation, they must be special circumstances which were not originally contemplated by the parties to the agreement and the relief from the Stipulation must operate to prevent manifest injustice. See Wald, 211 B.R. at 361.

Foreseeability appears to be the touchstone of the court's analysis. If the circumstances that caused the default were beyond the reasonable contemplation of the parties, it may be unfair to hold the debtor to his bargain. For example, in In re Olsen, 861 F.2d 188, 188-89 (8th Cir. 1988), a family farmer was unable to fulfill the terms of a 1985 stipulation because the federal government had unexpectedly changed its farm program in 1986 by splitting the regular annual payment into two installments. Effectively the government indefinitely postponed half a year's payment for any farmer continuing to receive assistance. As the debtors would have reasonably relied on the full payment to perform the negotiated agreement to make an annual payment to their lender, they were given relief from their agreement and allowed to modify their Chapter 12 plan. Closer to the facts in this case, the debtors in Burrows attributed their default under a stipulation to make cure and current mortgage payments to the mortgagee to illnesses suffered by the debtor Kimberly Burrows and her mother and the consequence of Kimberly's condition on her ability to find and keep a job. Burrows, 1995 WL 42398, at *1. The court found that "the unexpected illness of a debtor or a member of the debtor's family is such cause as would qualify as both unanticipated and beyond debtor's control," and allowed the debtors to modify their agreement. Id.

Turning to Debtor's proffered justifications for her default, I decline to hold that her inability to raise third party funds to make the initial payment was an extenuating circumstance warranting relief from her payment commitment. When Debtor signed the Stipulation, she had no assurance that her step-father would contribute $3,000.00 of the $5,000.00 initial payment. By her own testimony he had limited funds himself. Moreover as he was not told the exigency of her need for the funds, she could not have been surprised that his own needs were given priority. Unlike the government disbursement in Olsen which diverged from a government program with regular fixed payments, Debtor was able to foresee that the relative may have disappointed her. Compare In re AMC Realty Corp., 270 B.R. 132 (Bankr. S.D. N.Y. 2001) (court refused to allow the debtor to disregard a drop dead date for the sale of property when he subsequently was only able to perform after the allotted time had passed; that debtor might fail to timely perform was expressly contemplated by the agreement).

If the sole consequence of the unavailable outside funds was the slightly late payment of the $5,000, the outcome in this case might be different. However, because Debtor needed to utilize her and her husband's own funds to raise the $5,000, she had no cushion to draw upon when her salary was reduced. According to Debtor, the confluence of the $2,000 shortfall from her step-father and the diminution in her salary contributed to her failure to pay half of the August 1 payment and only then on August 21, 2006, some three weeks late. This case is thus distinguishable from Olsen where the unanticipated illnesses were the sole cause for the default.

However, the more significant distinction between this case and decisions rendered that have provided relief to debtors is the fact that Debtor with knowledge that her outside contribution and salary were reduced allowed the Stipulation to be presented to the Court, and the objection to confirmation to be withdrawn. Her Plan was confirmed with undisclosed material changed circumstances. Since Debtor had the accident on June 28, the day after the MFR relief hearing, it is clear that the settlement reported to the Court was sincere. However, before the Stipulation was presented to the Court on July 11 and before the confirmation hearing on July 6, 2006, Debtor knew (and had her husband advise her counsel) about her surgery, short hospital stay, and that she would be out of work. Indeed Debtor acknowledges knowing on June 28 that the period of disability employment could be as much as twelve weeks and her pay would be only 60% of her normal compensation. Therefore, prior to confirming the Plan and filing the Stipulation with the Court, Debtor, as well as her counsel, were aware of circumstances that could prevent her from complying with the Stipulation. With this knowledge, I cannot conclude that her accident and resulting diminished pay were unforeseeable circumstances that caused her default. At no time did Debtor who knew that she would be unable to abide by the terms of the Stipulation contact the Bank or its counsel or even move for relief from the Stipulation. See AMC Realty Corp., 270 B.R. at 145. Under these circumstances, the injustice would be not to enforce the Stipulation's consensual remedy of relief from stay.

Finally, the outcome of this contested matter is even more compelling given Debtor's continuing failure to make the Stipulation payments. While half of the August payment was

-9-

made, none of the September payment was tendered and Debtor returned to work and full salary on August 10. I do not find credible her testimony that she will have sufficient funds from her and her husband's paycheck to make up the three missed payments in three successive weeks and then pay the October 1 payment in full. If the paychecks support such an effort, there would have been a payment in September. When questioned by the Court as to why no payments were made on September 1, she indicated they simply did not have the funds.[8] The court will not use its equity powers to disregard the Stipulation, in order to allow the defaulting Debtor another chance to accomplish what she has already failed to do, especially when her ability to perform in the future is totally speculative. Since Debtor entered the Stipulation with the knowledge that she may not be able make the necessary payments and expressly agreed to stay relief in the event of default, I am compelled to enforce her agreement.

While the Motion was expressed in the alternative, Bank, in its post-hearing memorandum, urges the Court to dismiss the case finding Debtor's conduct to be in bad faith.[9] Because the Stipulation expressly provided the remedy that would attend to a default,

---

[8] I do not find credible her explanation that her husband's paycheck was received late because he was out of town. Given the dire financial situation, arrangements could have been made for it to be picked up and deposited.

[9] The Bank misstated the record in arguing that Debtor knew when the Stipulation was entered that she could not perform. On this record I cannot determine precisely who knew what and when and whether it was Debtor, her counsel or both who misled the Bank and caused it to abandon its oppositions. Before a finding of bad faith could be made, I would need additional evidence. Moreover, while a dismissal would render the confirmed Plan moot, there are other means to challenge the binding effect of this Plan if Bank's consent has been procured through a misrepresentation.

i.e., relief from stay, that is the remedy that I will order. To the extent that the Bank has been prejudiced by the conduct of Debtor and/or her attorney and wishes to seek further relief, I will entertain any further request if and when it is made.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:    September 19, 2006

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JENNIFER M. GLAUSER, | : | Bankruptcy No. 05-19233DWS |
| aka Jennifer M. Wurster, | : | |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 19th day of September 2006, upon consideration of the Motion to Dismiss or in the Alternative for Relief from Stay (the "Motion") of Deutsche Bank National Trust ("Bank"), after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED.** Bank is granted relief from stay to exercise its state law remedies with respect to the premises located at 14 Bark Hollow Lane, Horsham, Pennsylvania 19044.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

<u>In re Jennifer M. Glauser - Bankruptcy No. 05-19233DWS</u>

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA  19073

Sandhya Mathur Feltes, Esquire
KAPLIN STEWART
350 Sentry Parkway
Building 640
Blue Bell, PA  19422

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA  19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA  19107